# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| NORMAN SHELTON | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-00764 |
| | § | Judge Mazzant |
| BONHAM INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Bonham Independent School District's ("Bonham ISD") Motion for Partial Dismissal of Plaintiff's First Amended Complaint (Dkt. #20). Having reviewed the motion and Plaintiff's First Amended Complaint, the Court finds that the motion should be granted.

## BACKGROUND

Plaintiff Norman Shelton worked for Bonham ISD for approximately twelve years, and at the time of his termination was a groundskeeper in the maintenance department. According to Plaintiff,[1] John Shackelford, Plaintiff's supervisor and the Director of Transportation/Maintenance, was under investigation for the personal sale of district equipment. In August 2016, Plaintiff was asked to write a statement regarding the Shackelford situation. After writing the statement, Plaintiff was asked not to discuss the matter with anyone. Subsequently, Plaintiff attended an event, which was not an event related to Bonham ISD. At the event, an attendee approached Plaintiff and asked about the Shackelford situation, to which Plaintiff claimed

---

[1] The following set of facts are the facts asserted by Plaintiff in his First Amended Complaint that are relevant to the current motion. Plaintiff also has a claim for age discrimination; however those facts are not included in this motion. For purposes of this motion, the Court takes these allegations as true, as it is required to do at the motion to dismiss stage.

he could not discuss the matter. However, Jim Currin ("Currin"), Bonham ISD's electrician, overheard the conversation and began to detail the investigation of Shackelford to the attendee.

Subsequently, on September 7, 2016, Claude Lewis ("Lewis"), the interim Director of Maintenance, informed Plaintiff that Bill Wakefield ("Wakefield"), the Director of Operations, ordered Plaintiff not to discuss the Shackelford investigation with any reporters or he would lose his job. Shortly thereafter, a police officer called Plaintiff into the station to discuss the matter. He was called in on two separate occasions. After his last visit, Currin approached Plaintiff at his second job at the Bonham VFW asking what happened during his visits at the police station. Wakefield and Lewis were the only ones who knew Plaintiff was called into the station. Currin also told Plaintiff that Wakefield asked whether Plaintiff was involved in Shackelford's scheme. The following week Kelly Trompler, an Assistant Superintendent, and Wakefield terminated Plaintiff and Wakefield stated the reason was because Plaintiff discussed the investigation. Two days later, Plaintiff went to Wakefield to pick up his final paycheck. At that time, Wakefield told Plaintiff that Bonham ISD terminated Plaintiff because of insubordination. Plaintiff protested that others had discussed the investigation and were not punished. When asked who had discussed the investigation, Plaintiff provided Currin's name and Wakefield told Plaintiff that he needed to be able to back up the accusation.

On October 24, 2017, Plaintiff filed his complaint based on his termination from Bonham ISD for violation of the Age Discrimination in Employment Act of 1967 and violations of 42 U.S.C. § 1983 based on First Amendment retaliation. On February 14, 2018, Defendant filed the present partial motion to dismiss Plaintiff's § 1983 claims (Dkt. #20). Plaintiff filed a response on February 28, 2018 (Dkt. #22). Finally, Bonham ISD filed its reply on March 7, 2018 (Dkt. #23).

**LEGAL STANDARD**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556

3

U.S. at 664.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."  *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'"  *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted).  This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Bonham ISD moves for dismissal of Plaintiff's claim for First Amendment retaliation. Bonham ISD argues that Plaintiff has failed to plead a proper policymaker and an official policy. Plaintiff responds that he has given fair notice to Bonham ISD of his First Amendment retaliation claim and that these arguments are more appropriate for summary judgment.

As the Court previously noted in *Wright v. Denison Independent School District*, when alleging a § 1983 claim, a plaintiff may not establish liability against a government entity through *respondeat superior*.  *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Wright*, No. 4:16-cv-615, 2017 WL 2262778, at *3 (E.D. Tex. May 24, 2017), *memorandum adopting in part*, No. 4:16-cv-615, Dkt. #36 (E.D. Tex. Apr. 19, 2017).  Accordingly, plaintiffs must plead and prove that the government entity "*itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95).  To establish that the government entity caused the constitutional violation, the Fifth Circuit requires a showing that an "official policy" caused the

plaintiff's harm. *Deville*, 567 F.3d at 170. The Fifth Circuit has explained that an official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). A plaintiff has to "specifically identif[y]" the contested policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Further, if that "policy [is] based on a pattern," the plaintiff must demonstrate the pattern "'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of . . . employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)). "Such 'policy' must derive from the government entity's recognized [policymaker], such as a school's board of trustees. This ensures plaintiffs do not saddle government entities with vicarious liability for the actions of its agents not in accord with policy." *Wright*, 2017 WL 2262778, at *3 (citing *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 257–48 (5th Cir. 2003); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403–04 (1997)).

As the Court further observed, "[p]art-and-parcel of a court's obligation to avoid subjecting a government entity to *respondeat superior* liability under § 1983 is the court's responsibility to screen pleadings for sufficiency under the *Twombly* and *Iqbal* standard for pleading sufficiency."

*Id.* According to the Court, "generic assertions of municipal liability will not suffice." *Wright*, 2017 WL 2262778, at *4.

> Even considering "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedure prior to discovery" when suing a government entity under § 1983, "*Leatherman* and *Iqbal* may be reconciled, without allowing boilerplate allegations, on the one hand, or requiring plaintiff to plead specific factual details to which they do not have access ..., on the other." *Thomas,* 800 F. Supp. 2d. at 842. Indeed, plaintiffs suing a government entity and claiming some policy of the entity harmed them should be able to muster allegations of "past incidents of misconduct to others, multiple harms that occurred to the plaintiff[s] [themselves], misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy" in order to comply with *Twombly* and *Iqbal*. *Id.* at 842–43 (noting "[t]hose types of details, or any other minimal elaboration a plaintiff can provide, help to 'satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests,' . . . and also to 'permit the court to infer more than the mere possibility of misconduct'").

*Id.*

Here, Plaintiff identified the "policy" as "requir[ing] employees not to speak about the John Shackelford situation on penalty of discharge"; and that based upon information and belief "this practice of instructing employees not to speak about similar matters was a widespread practice of Defendant." (Dkt. #19 at ¶¶ 29–30). Plaintiff failed to demonstrate any past incidents of misconduct toward others. Indeed, Plaintiff's First Amended Complaint suggests the opposite as it alleges Currin discussed the Shackelford investigation and was not punished or fired for doing so. However, reading the allegations in the light most favorable to Plaintiff, Plaintiff did plead multiple instances of harm to the Plaintiff himself. On two separate occasions—August 24, 2016 and September 7, 2016—Plaintiff was told not to talk with anyone regarding the Shackelford situation. Then, Plaintiff was terminated allegedly for speaking about the Shackelford situation. Plaintiff also sufficiently pleaded the involvement of multiple officials—Plaintiff alleges Lewis, Wakefield, and Trompler, were all involved.

Whether or not that pleading is sufficient to create a plausible theory of an official policy, the First Amended Complaint fails to show is any nexus between the described conduct and a Bonham ISD policymaker. *See Wright*, 2017 WL 2262778, at *5. To show that the government entity caused the constitutional violation, the plaintiff must identify a policymaker, which is a person that must have final policymaking authority. *Rivera*, 349 F.3d at 247 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "'[W]hether a particular official has final policymaking authority is a question of *state law*.'" *Id.* (alterations in original) (emphasis in original) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "Texas law unequivocally delegates to the Board of Trustees 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'" *Id.* (quoting Tex. Educ. Code § 11.151(b)).

Here, Plaintiff's First Amended Complaint identifies Dr. Marvin Beaty, Bonham ISD's Superintendent, and Bill Wakefield, the Director of Operations, as the policymakers in this case. As an initial matter, Beaty is not alleged to have any involvement in the alleged conduct and as such the Court will proceed in its analysis against Wakefield only. The First Amended Complaint suggests that Wakefield delegated policymaking authority. However, Plaintiff pleads no facts to suggest how the Bonham ISD Board of Trustees ("the Board") delegated policymaking authority to Wakefield or even what type of policymaking authority Wakefield had. Moreover, Plaintiff does not suggest by what Texas law or which of the Board's policies even allows the Board to delegate its policymaking authority to any employees. While Wakefield may have decision-making authority, such authority is distinguishable from final policymaking authority. *Id.* at 248; *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1246 (5th Cir. 1993). Based on Texas law, such authority rests with the Board. Tex. Educ. Code § 11.151(b). Accordingly, the First

Amended Complaint does not state a plausible claim for First Amendment retaliation because Plaintiff failed to identify a policymaker. As such, the Court finds that Plaintiff failed to plead a plausible claim of First Amendment retaliation.[2]

## CONCLUSION

It is therefore **ORDERED** Defendant Bonham Independent School District's Motion for Partial Dismissal of Plaintiff's First Amended Complaint (Dkt. #20) is hereby **GRANTED**. Plaintiff's claims against Bonham ISD based on violations of 42 U.S.C. § 1983 for First Amendment retaliation are therefore **DISMISSED with prejudice**. The case will proceed on Plaintiff's claims against Bonham ISD for age discrimination.

**SIGNED this 16th day of May, 2018.**

_Amos Mazzant_

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[2] Despite Plaintiff's failure to plead a proper policymaker and the Court's granting of this partial motion to dismiss, if, during discovery, Plaintiff locates evidence that the Board delegated policymaking authority to Wakefield, the Court will not preclude Plaintiff from filing a motion to reconsider this order.